Jerome Reisman (JR-0933)
REISMAN, PEIREZ & REISMAN, L.L.P.
1305 Franklin Avenue
PO Box 119
Garden City, New York 11530
Office: 516.746.7799
Fax: 516.742.4946
JReisman@ReismanPeirez.com

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

In re

    97-13 REALTY CORP.,

                                 Debtor.

-----------------------------------------------------------X

Chapter 11
Case No. 10-44274-jf

**DEBTOR'S DISCLOSURE STATEMENT DATED August 10, 2010**

      97-13 Realty Corp., the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor" or "97-13 Realty"), by and through undersigned counsel, hereby submits this Disclosure Statement dated August 10, 2010 to assist its creditors in making an informed decision in voting on the Debtor's Plan of Reorganization dated August 10, 2010 (the "Plan") proposed pursuant to 11 U.S.C. § 1121.

# ARTICLE 1

# INTRODUCTION TO THE DISCLOSURE STATEMENT AND VOTING

1.1 **Purpose of the Disclosure Statement.** This Disclosure Statement sets forth certain information regarding 97-13 Realty's prepetition history, its assets, significant events that have occurred during this Chapter 11 case, a summary of the Plan, including when and how creditors will be paid, and a brief discussion of the confirmation process and the voting procedures that holders of claims in Impaired Classes must follow for their votes to be counted.

The primary purpose of this Disclosure Statement is to provide adequate information to those creditors voting on the Plan so that they may make a reasonably informed decision with respect to exercising their right to accept or reject the Plan. This Disclosure Statement is intended for the sole use of creditors and other parties in interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan and nothing contained herein shall constitute an admission of any fact or liability by any party or be admissible in any proceedings involving 97-13 Realty or any other party or be deemed conclusive advise on the tax or other legal effects of the reorganization on holders of claims or interests.

**You should consult your personal counsel or tax advisor on any questions or concerns respecting tax, securities, or other legal consequences of the Plan.**

1.2 **Definitions.** Unless otherwise defined herein, terms defined in the Plan shall have the same meaning when used in this Disclosure Statement. In addition, unless otherwise defined herein or in the Plan, terms used in this Disclosure Statement shall have the same meaning as in the Bankruptcy Code (the "Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), or, if not defined therein, their ordinary meaning.

1.3 **Authorized Representations.** This Disclosure Statement is the only document authorized by the Bankruptcy Court to be used in connection with the solicitation of votes on the Plan. You should not rely upon any representations or inducements made to secure your acceptance of the Plan other than those set forth herein or in the Plan. **The Bankruptcy Court's approval of this Disclosure Statement does not constitute a certification or ruling by the Court regarding the completeness or accuracy of any statements contained herein. The information contained in this Disclosure Statement came from the records of 97-13 Realty.**

This Disclosure Statement is not the Plan. This Disclosure Statement, together with the Plan (**Exhibit "A"**), should be read in their entirety before you vote on the Plan. For the convenience of the creditors and holders of interests, the Plan is summarized in this Disclosure Statement, but all summaries are qualified in their entirety by the Plan itself, which is controlling in the event of any inconsistency. The financial information contained herein has been provided by in good faith, but has not been audited by a

certified public accountant and has not necessarily been prepared in accordance with generally accepted accounting principals.

1.4     **Voting Procedures.**  To be entitled to vote, a creditor must have an Allowed Claim that is impaired under the Plan. The Bankruptcy Code defines whether a claim is impaired in 11 U.S.C. § 1124. Summarily, a claim is impaired if the plan modifies the legal or contractual rights of the claimant, or if the plan does not cure and reinstate the legal rights of the claimant. A creditor in a class that will not, under any circumstances, receive any distributions under the Plan, is not entitled to vote as the class of which it is a member is deemed to have rejected the Plan. If a creditor holds more than one claim in one class, all of the claims in such class will be aggregated and the creditor will be entitled to one vote in the amount of all aggregated claims.

**All creditors or parties in interest entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating and signing the Ballot which accompanies this Disclosure Statement.**

In order for the Ballot to be considered, the original Ballot must be mailed to the Bankruptcy Court and the copies of the Ballot must be sent to the attorneys for the Plan Proponents. **The Court has issued an order requiring that all votes for the acceptance or rejection of the Plan be _received_ by close of business on _____** The Ballots should be sent as follows:

177593

|  |  |
|---|---|
| The original to: | Clerk<br>U.S. Bankruptcy Court<br>Eastern District of New York<br>Conrad B. Duberstein Courthouse<br>271 Cadman Plaza East<br>Brooklyn, New York 11201-1800 |
| A copy to: | Jerome Reisman, Esq.<br>Reisman Peirez & Reisman, LLP<br>Attorneys for Debtor<br>1305 Franklin Avenue – Ste. 270<br>P.O. Box 119<br>Garden City, New York 11530 |

Your ballot will not be counted if the Clerk of the Bankruptcy Court or the Proponent's counsel receives it after such deadline. You may not change your vote after it is cast, unless the Bankruptcy Court permits you to do so after notice and a hearing to determine whether sufficient cause exists to permit the change.

1.5 **Confirmation of the Plan.** In order for the Proponent's Plan to be effective, it has to be confirmed. Confirmation of the Plan means that the Court has approved the Plan. For the Plan to be confirmed, votes by each Impaired Class representing at least two-thirds (2/3) in amount of the Allowed Claims voting in each class and greater than one-half (1/2) in number of individual creditors for such class (of those casting votes) must be submitted in favor of acceptance of the Proponent's Plan. If the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Proponent's Plan pursuant to 11 U.S.C. § 1129(b) if one Impaired Class accepts the Plan and the Court finds that 97-13 Realty's Plan provides,

among other things, fair and equitable treatment of the classes rejecting the Plan and that creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation (discussed more fully below).

When confirmed by the Bankruptcy Court, this Plan will bind all holders of claims or equity interests in 97-13 Realty, whether or not they are entitled to vote, or did vote on the Plan and whether or not they received or retained any distributions or property under the Plan.

1.6 **Proponent's Recommendations And Position.** The Proponent strongly urges each creditor to vote to accept the Plan. 97-13 Realty believes that each person or entity entitled to vote will conclude that the Plan is fair, reasonable and provides the greatest return to the greatest number of creditors.

## ARTICLE 2

## HISTORY OF 97-13 REALTY

2.1 **Formation of 97-13 Realty.** 97-13 Realty is a New York corporation that owns and operates a mixed use real estate complex located at 97-13 37th Avenue, Corona, New York, 11368 ("Real Property"). The Real Property consists of two commercial units and two residential apartments which 97-13 Realty rents.

2.2 **Incidents Leading to Chapter 11 Filing.** Due to a fire at an adjoining building and smoke and other damage caused to the Real Property, the fire department vacated all the tenants from the Real Property, and the Debtor received no payment of

rent for over a year until such time as repairs were completed and the tenants were allowed to move back in. 97-13 Realty was unable to create sufficient revenue to service the secured debt owed to 97-13 Capital LLC ("Capital LLC"). Ultimately, Capital LLC commenced foreclosure proceedings on the Real Property, which proceedings were stayed as a result of the instant bankruptcy filing.

2.3     **97-13 Realty's Future.** To alleviate the problems that led to this Chapter 11 filing, 97-13 Realty will continue to work to reduce operating expenses, while maintaining a quality environment for its tenants. Moreover, the restructuring of 97-13 Realty's secured debt, combined with the guarantee of Henry Bisono ("Bisono") the shareholder of 97-13 Realty, to fund the Reserve Account if necessary and guarantee the Plan payments to the Unsecured Creditors, should allow 97-13 Realty to succeed in this reorganization effort.

2.4     **Anticipated Operations.** Currently, 97-13 Realty's building is fully rented and when and if a vacancy occurs vacancies are quickly filled because of the demand. The rents from the tenants, the cash invested by Bisono, and the Reserve Account will be used to pay the monthly operating expenses and the plan payments to the secured and unsecured creditors.

# ARTICLE 3

# DEVELOPMENTS DURING THE BANKRUPTCY CASE

**Bankruptcy Proceeding.** On May 11, 2010, 97-13 Realty filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code.

# ARTICLE 4

# SUMMARY OF 97-13 REALTY'S CURRENT FINANCIAL CONDITION

97-13 Realty's current financial condition is detailed in the monthly operating reports. 97-13 Realty anticipates that it will have cash on hand from post- petition operations on the Effective Date of the Plan. Those funds, future rents, sales proceeds, and cash infusions provided by Bisono will be used to make the payments provided for in the Plan.

# ARTICLE 5

# DESCRIPTION OF ASSETS

97-13 Realty's assets are listed on its Schedule and Statement of Financial Affairs filed in this case. The assets of 97-13 Realty consist of bank accounts, and the Real Property. 97-13 Realty estimates the value of its assets at approximately $1,650,000 and the amount of its liabilities at approximately $1,650,000. In the event of a liquidation, 97-13 Realty anticipates that all of its assets would be foreclosed upon by the secured creditor.

# ARTICLE 6

## POST-CONFIRMATION CONTROL

Bisono, the President of the debtor, will remain the manager of the reorganized 97-13 Realty. As manager, Bisono will not receive any compensation. Bisono, or any subsequent person or persons appointed as manager of the reorganized 97-13 Realty post confirmation, shall be responsible for preparing and filing quarterly post confirmation financial reports. Copies of those reports shall be provided to the United States Trustee's Office. During the term of the Plan and until the Bankruptcy Court enters an Order closing the case, 97-13 Realty will pay quarterly fees to the United States Trustee's Office. On the Confirmation Date, all existing shares in 97-13 Realty will be extinguished. On that same day, 97-13 Realty will create and issue 100% of the new shares in the Reorganized 97-13 Realty to Bisono if he does all of the following: (i) Contributes at least $2,000 to the reorganized 97-13 Realty on the Effective Date; (ii) executes an unconditional guaranty to 97-13 Realty to fund any monthly deficiency in the Reserve Account; and (iii) executes an unconditional guaranty to 97-13 Realty to satisfy all Plan payments committed or promised to Unsecured Creditors.

# ARTICLE 7

## SUMMARY OF THE PLAN

This section contains a brief summary of the Plan, and it is qualified in its entirety by reference to the Plan, which accompanies this Disclosure Statement. **THIS**

SUMMARY DOES NOT PURPORT TO BE COMPLETE. THE PLAN ITSELF CONTROLS THE RELATIONSHIP BETWEEN 97-13 REALTY AND CREDITORS. YOU SHOULD READ THE PLAN IN ITS ENTIRETY PRIOR TO CASTING YOUR BALLOT.

7.1    **Classification and Treatment of Claims.**

7.1.1  **Class I - Administrative Claims.** Class I consists of the allowed Administrative Claims for actual and necessary costs and expenses of administration entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code. This class includes, without limitation, post-petition tax claims, 97-13 Realty's attorneys' fees, approved accounting fees, and fees due the United States Trustee, if any. Holders of Allowed Class I Claims shall be paid, in full, on the Effective Date of the Plan of Reorganization from 97-13 Realty' cash funds, or upon such other terms as 97-13 Realty and the holders of Allowed Class I Claims agree. Class I Claims are not impaired.

7.1.2  **Class II — Priority Claims.** The Class II Claims consist of all Claims which are entitled to priority treatment pursuant to 11 U.S.C. § 507(a). Each holder of a Secured Claim in Class II is considered to be its own separate subclass within Class II, and each such subclass is deemed to be a separate Class for purposes of the Plan. 97-13 Realty does not believe any such claims exist. Class II consists of various sub-classes of priority creditor claims. Unless otherwise specified, holders of Allowed Claims in any of the Class II sub-classes shall receive full payment of the amount of their

Allowed Class II Claims as required by 11 U.S.C. § 1129. Class II Claims are not impaired.

    7.1.2.1.   **Class II(a) – Priority Tax Claim of the Internal Revenue Service.** Class II(a) consists of the allowed priority tax claim of the Internal Revenue Service relating to pre-petition claims for taxes. To the extent a claim exists, the holder of the Allowed Priority Class II(a) claim shall be paid in four equal yearly payments such that the holder shall be paid, in full, within five years of the Petition Date. The first payment will be due sixty days after the Effective Date. The interest rate paid to the Allowed Class II(a) Claim shall be six percent (6%) per annum from and after the Effective Date. 97-13 Realty does not believe that any Class II(a) Claims exist. The Class II(a) Claim is impaired.

    7.1.3   **Class III – Secured Claims.** The Class III Claims consist of all Secured Claims against 97-13 Realty. Each holder of a Secured Claim in Class III is considered to be in its own separate subclass within Class III, and each such subclass is deemed to be a separate Class for purposes of the Plan. Class III consists of various sub-classes of asserted secured creditor claims. Unless otherwise specified, holders of Allowed Secured Claims shall retain any existing perfected lien to secure 97-13 Realty's obligations under the Plan. Any of 97-13 Realty's defaults under the loan documents with the Allowed Secured Claimant shall be deemed cured as of the Effective Date. To the extent such loan documents provide for a default resulting from 97-13 Realty's

bankruptcy filing, such default shall not be enforceable. Notwithstanding any pre-bankruptcy agreements with Class III Claimants, 97-13 Realty's statement of the value of each secured claim shall be final unless a creditor objects to 97-13 Realty's value prior to the confirmation of the Plan. Class III Secured Creditors shall retain the liens securing their Allowed Claims. The liens securing Allowed Class III Secured Claims shall be extinguished upon payment of the Allowed Class III Secured Claim. The holder of an Allowed Class III Secured Claim that has been paid shall promptly file or record notice of the release of its lien. Unless otherwise provided, payments to holders of Allowed Class III Claims will begin 30 days after the Effective Date.

7.1.3.1. **Class III(a) – Secured Claim of 97-13 Capital LLC ("Capital").** Class III(a) consists of the allowed claim of Capital relating to its lien secured by the real property located at 97-13 37th Avenue, Corona, New York ("Real Property"). The holder of the Allowed Class III(a) Claim shall receive its regular monthly mortgage payments of $8,850.96 in equal monthly payments of principal and interest until the end of the term of the mortgage. In addition, Capital LLC shall receive $246,702 representing interest and late fees payable interest only at a rate of six percent (6%) per annum for sixty (60) months with a balloon payment of $246,702 on the 60th month. Debtor shall be entitled to pre-pay any amounts due to Capital LLC without penalty. Class III(a) is impaired.

7.1.3.2. **Class III(b) – Secured Claim of Pedro Lopez.** Class III(b) consists of the disputed claim of Pedro Lopez ("Lopez") relating to his lien secured by a judgment. The holder of the Allowed Class III(b) Claim shall retain his lien. The Debtor intends to object to such claim and will move to set aside the lien. Payment will begin 30 days after the Effective Date. Class III(b) is impaired.

7.1.4 **Class IV – General Unsecured Creditors.** Class IV consists of all Allowed Unsecured Claims that are not entitled to classification in any other Class of Claims. Holders of Allowed Class IV Claims shall be paid the sum of $42,000 on a pro rata basis. 97-13 Realty shall make 60 monthly payments of $700 to the holders of Allowed Class IV Claims beginning 180 days after the Effective Date ("Initial Payment Date") and continuing thereafter until paid in full. The amount of the payments to the individual Class IV Claim shall be based upon each Class IV Claim's pro rata share of the potential Class IV claims. No interest will accrue or be paid on the Allowed Class IV Claims and no creditor will be paid more than the full amount of its Allowed Class IV Claim. Holders of Claims IV Claims that are not Allowed Claims prior to the Initial Payment Date, shall receive payment on the anniversary of the Initial Payment Date that falls after their Class IV Claim becomes an Allowed Claim. The Class IV claims are impaired.

# ARTICLE 8

# MEANS TO IMPLEMENT PLAN

The Plan will be funded by 97-13 Realty' cash on hand, revenue from 97-13 Realty's sales and rentals of units within the Real Property, and from a cash infusion of at least $2,000 from Henry Bisono. Bisono will make the cash infusion on the Effective Date. In addition to funding the Plan and paying expenses, 97-13 Realty's net profits each month will be used to create a reserve account in the amount of $12,000 and will deposit $2,000 per month into an account for six months. If 97-13 Realty does not have sufficient funds at the end of the month to make the $2,000 deposit, Bisono will provide enough funds to 97-13 Realty to make the monthly contribution to the reserve account. Finally, Bisono will personally guarantee the funding of the $12,000 reserve account and will personally guarantee the Plan payments, set forth below, to the Unsecured Creditors. 97-13 Realty will use the funds to make the specific payments set forth in Article 7 of the Disclosure Statement.

## ARTICLE 9

## LIQUIDATION ANALYSIS

As a condition to Confirmation, Bankruptcy Code § 1129(a)(7) requires the Plan to provide that each creditor either accept the Plan or receive from 97-13 Realty' estate as much under the Plan as each creditor would receive in a Chapter 7 liquidation of 97-13 Realty.

9.1 **Liquidation Analysis.** 97-13 Realty values its assets in its schedules and statement of financial affairs at $1,650,000 which relates to the value of the Real

177593

Property. The assets consist mainly of the Real Property. 97-13 Realty believes that the Real Property is fully encumbered. Therefore, in the event of a liquidation, 97-13 Realty believes that the secured creditors listed herein will recover all of 97-13 Realty's assets, thereby rendering its value unavailable to unsecured creditors. Based upon the extent of the secured claims, 97-13 Realty believes that unsecured creditors are likely to recover an amount in excess of what they would likely recover in a Chapter 7 liquidation.

## ARTICLE 10

## TAX ISSUES

97-13 Realty makes no representations regarding any tax implications resulting from confirmation of the Plan. **CLAIMANTS AND PARTIES IN INTEREST ARE ADVISED TO CONSULT WITH THEIR TAX ADVISORS CONCERNING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE AND LOCAL TAX CONSEQUENCES.**

## ARTICLE 11

## BALLOTING INSTRUCTIONS

Creditors will vote to accept or reject this Plan. THIS PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS, provided, however, if the requisite

acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to 11 U.S.C. § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the classes rejecting the Plan and that creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation.

## ARTICLE 12

## MODIFICATION OF PLAN

97-13 Realty reserves the right to modify the Plan in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

12.1 **Pre-Confirmation.** In accordance with Section 1127(a) of the Code, the modification of the Plan may be proposed in writing by the Proponent at any time before its Confirmation, provided that the Plan, as thus modified, meets the requirements of Sections 1122 and 1123 of the Code, and the Proponent complies with Section 1125 of the Code.

12.2 **Post-Confirmation.** In accordance with Section 1127(b) of the Code, the Plan also may be modified at any time after its Confirmation and before its substantial consummation, provided that the Plan as thus modified meets the requirements of Sections 1122 and 1123 of the Code, provided further that the circumstances then existing justify such modification, and the Court confirms the Plan as thus modified under Section 1129 of the Code.

12.3  **Objections.** Any holder of a claim or equity interest that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Bankruptcy Court for doing so, such holder changes its previous acceptance or rejection.

12.4  **Effect.** Every modification of the Plan will supersede the previous version of the Plan as and when ever each modification is effective. When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void and unusable by 97-13 Realty or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

## ARTICLE 13

## CONFIRMATION, RISKS & RECOMMENDATION

13.1  **Best Interests Test.** 97-13 Realty believes that the "best interests test" imposed by 11 U.S.C. §1129(a)(7) is satisfied by the Plan because each holder of a Claim or Interest not accepting the Plan will receive at least as much as such holder would receive in a Chapter 7 liquidation as discussed in detail in Article 9 herein.

13.2  **Fair and Equitable Test.** 97-13 Realty believes that the Plan will satisfy the fair and equitable requirements of the Bankruptcy Code, to the extent such requirements are applicable based upon the vote of creditors on the Plan.

13.3  **Recommendation of 97-13 Realty.** 97-13 Realty recommends that the Plan be approved.

177593

RESPECTFULLY SUBMITTED this 10th day of August, 2010.

                                              **97-13 REALTY CORP.**

                                              Henry Bisono, President

**APPROVED AS TO FORM AND CONTENT:**
**REISMAN PEIREZ & REISMAN, LLC**

By: _____
      Jerome Reisman (JR-0933)
1305 Franklin Avenue
P.O. Box 119
Garden City, New York 11530
Attorneys for Debtor